

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 07-61684-CIV-COHN/SELTZER

PUNCH CLOCK, INC., a Florida
corporation,

        Plaintiff,

v.

SMART SOFTWARE DEVELOPMENT,
d/b/a PUNCH-CLOCK,

        Defendant.
_____/

## ORDER GRANTING MOTION FOR DEFAULT JUDGMENT

**THIS CAUSE** is before the Court upon Plaintiff Punch Clock, Inc.'s Motion for Final Default Judgment [DE 18]. The Court has considered the Motion, the record, and the exhibits and testimony from a hearing conducted on April 4, 2008, and is otherwise fully advised in the premises.

I.    **Background and Factual Findings**

Plaintiff Punch Clock, Inc. ("PCI") is a Florida corporation that develops, markets, and sells a full-featured time clock and payroll computer software program under the trademark PUNCH CLOCK. This trademark is federally registered, (Exhibit D), and has been used by Plaintiff since 1993. The software is sold through Plaintiff's website, www.punchclock.com.

Defendant Smart Software Development ("SSD") is a Canadian corporation that provides time keeping computer software with an infringing trademark PUNCH CLOCK directed at companies throughout North America, including a number of south Florida

companies, primarily through its website www.punch-clock.com. This website was launched in September 2001, and at that time, the parties exchanged emails discussing the conflict between Plaintiff's federally registered trademark and the time-keeping program and the infringing mark and goods sold by SSD. SSD took the position that it was not violating PCI's trademark rights because SSD operated in Canada. Since that time, despite knowing of PCI's trademark, SSD has done nothing to avoid or reduce the likelihood of consumer confusion, and has in fact expanded its U.S. presence using the PUNCH CLOCK trademark.

Steven Chess, operating manager of PCI, testified that the confusion created in the marketplace by SSD's infringing activities has caused significant problems for PCI. Mr. Chess receives daily emails from customers who are confused as to which company's product they have purchased and who often have complaints about problems with the software purchased from SSD.

PCI has also lost traffic to its Web site as a result of SSD's infringing activities. Evidence introduced at the hearing showed that the search terms "punch clock" and "punch-clock" in the search engine Google produce search results that list SSD's Web site above the listing for PCI's Web site. (Exhibit I.) Since the start of the instant litigation, SSD began using the name "Lion Clock" instead of "Punch Clock." However, the "www.punch-clock.com" Web site is still in SSD's control, and redirects consumers to "www.lionclock.com." Furthermore, the search terms "punch clock" and "punch-clock" entered into Google still result in a listing for Lion Clock that is higher than the listing for PCI's Punch Clock Web site. (Exhibit I.)

The loss of Web site traffic is also documented in Alexa searches for both

"www.punchclock.com" and "www.punch-clock.com." As of January 28, 2008, the traffic rank for "www.punchclock.com," PCI's Web site, averaged over the last three months, was 9,010,642. (Exhibit L.) This rank was much lower than the traffic rank for "www.punch-clock.com," the infringing Web site, which had a traffic rank of 983,207. (Id.) A subsequent Alexa search from March 18, 2008, after SSD changed the name of its Web site to "Lion Clock," shows a ranking for "www.punchclock.com" of 4,837,571. (Exhibit M.) Although this rank is a great deal higher than it was prior to SSD's name change, showing some improvement in consumers' ability to differentiate between the two companies, the traffic rank for "www.punch-clock.com" was still a great deal higher at 1,364,396. (Id.) This evidence shows the significantly higher Web traffic that SSD has received as a result of its infringing use of the Punch Clock mark, to the detriment of Plaintiff PCI.

Mr. Chess also testified as to the knowing and willful nature of the violation. SSD was notified of the infringement as early as 2001, but informed PCI that it was not in violation of the trademark because it operated in Canada. (Exhibit G.) Although SSD was properly served with the Complaint in this action, retained counsel, and engaged in settlement negotiations with PCI, it abruptly fired counsel and withdrew from all participation in the litigation before filing an answer. It seems clear from the evidence that SSD knows that its actions constitute trademark infringement, but that SSD has elected to continue the actions, causing harm to Plaintiff PCI.

This Court entered default against Defendant on March 4, 2008 [DE 16], finding that "[s]ervice of process was completed, in accordance with the Hague Convention, on January 11, 2008."

3

## II. Legal Standard for Default Judgment

In defaulting, Defendant "admits the plaintiff's well-pleaded allegations of fact." Buchanan v. Bowman, 820 F.2d 359, 361 (11th Cir. 1987). If the facts in the complaint are sufficient to establish liability, then the court must conduct an inquiry to ascertain the amount of damages. See Ortiz-Gonzalez v. Fonovisa, 277 F.3d 59, 62-63 (1st Cir. 2002); Arista Records, Inc. v. Beker Enter., Inc., 298 F. Supp. 2d 1310, 1312 (S.D. Fla. 2003); Tiffany v. Luban, 282 F. Supp. 2d 123, 124 (S.D.N.Y. 2003). Damages may be awarded only if the record adequately reflects the basis for the award via a hearing or a demonstration of detailed affidavits establishing the necessary facts. See Adolph Coors Co. v. Movement Against Racism and The Klan, 777 F.2d 1538, 1544 (11th Cir. 1985).

## III. Discussion

In its Complaint, Plaintiff asserts claims for federal trademark infringement, violations of the Anti-Cybersquatting Consumer Protection Act ("ACPA"), and violations of Section 43(a) of the Lanham Act. Based on the allegations in the well-pleaded Complaint, Plaintiff is entitled to Default Judgment on each of these claims.

### A. Count 1: Federal Trademark Infringement

In Count 1 of the Complaint, Plaintiff alleges federal trademark infringement under §32 of the Lanham Act. Under this section, liability for trademark infringement occurs when a person "use[s] in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark" which "is likely to cause confusion, or to cause

mistake, or to deceive." 15 U.S.C. §1114(1)(a).  To prevail on a trademark infringement claim, a plaintiff must demonstrate that (1) the defendant used its mark in commerce, (2) without its consent, and (3) defendant's mark is likely to cause consumer confusion or result in mistake.  Int'l Cosmetics Exch., Inc. v. Gapardis Health & Beauty, Inc., 303 F.3d 1242 (11th Cir. 2002); McDonald's Corp. v. Robertson, 147 F.3d 1301, 1307 (11th Cir. 1998).  Plaintiff has provided ample evidence that Defendant SSD is using the "Punch Clock" mark in commerce, and has demonstrated PCI's express lack of consent to the use.  Furthermore, Plaintiff's allegations, supported by the testimony of Mr. Chess and the e-mail correspondence from confused customers entered into evidence, demonstrate that the Defendant's use of the "Punch Clock" mark is not only likely to cause consumer confusion, but has in fact already caused extensive confusion over the course of the past seven years.  Therefore, the Court concludes that Plaintiff is entitled to default judgment on Count 1 of the Complaint.

**B.     *Count 2: Violations of the ACPA***

In Count 2 of the Complaint, Plaintiff alleges a claim under the Anti-Cybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. §1125(d). "To prevail under the ACPA, a plaintiff must prove that (1) its mark is distinctive or famous and entitled to protection; (2) the defendant's domain name is identical or confusingly similar to the plaintiff's mark; and (3) the defendant registered or used the domain name with a bad faith intent to profit."  Bavaro Palace, S.A. v. Vacation Tours, Inc., 203 Fed. Appx. 252, 256 (11th Cir. 2006).  Plaintiff has established that its mark is distinctive through introduction of evidence showing that the "Punch Clock" mark is registered on the principal federal trademark register, on which only marks not "merely descriptive" may

5

be registered. See 15 U.S.C. §1052(e). Plaintiff has established that the Defendant's domain name, "www.punch-clock.com" is nearly identical and confusingly similar to PCI's "www.punchclock.com" Web site. Finally, Plaintiff has established the Defendant's bad faith intent to profit though its well-pleaded allegations of SSD's intent to divert consumers of time keeping sotware away from PCI with the use of the accused domain name, bolstered by the evidence of its ongoing willful infringement of the trademark. Therefore, the Court concludes that Plaintiff is entitled to default judgment as to Count 2 of the Complaint.

### C.  Count 3: Violations of Section 43(a) of the Lanham Act

In Count 3 of the Complaint, Plaintiff alleges a claim under Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a). To prove a claim for unfair competition under Section 43(a), a plaintiff must show (1) that it had prior rights to the mark at issue, and (2) that the defendant adopted a mark or name that was the same, or confusingly similar to, plaintiff's mark such that consumers were likely to confuse the two. Planetary Motion, Inc. v. Techsplosion, Inc., 261 F.3d 1188, 1193 (11th Cir. 2001). As discussed above, Plaintiff has clearly established, through the allegations in its well-pleaded Complaint and evidence introduced at the hearing, that PCI had prior rights to the mark, which is a federally registered trademark, and that SSD has used both the identical mark, as well as the variation "punch-clock," which is confusingly similar to consumers. Therefore, the Court concludes that Plaintiff is entitled to default judgment as to Count 3 of the Complaint.

6

### D. *Damages*

Plaintiff seeks damages, including injunctive relief, corrective advertising compensatory damages (trebled, based on the willful nature of the violation), ACPA statutory damages, and attorneys' fees and costs.

The corrective advertising damages sought reflect seven years of corrective advertising through Google AdWords. At a cost of approximately $136 per day, Plaintiff can purchase top placement of its Web site on Google search listings for the top five keywords associated with the "Punch Clock" mark: "punch clock," "punch clock software," "punchclock," "punch clocks," and "punch time clock."[1] This corrective advertising will allow Plaintiff's Web site to receive top billing on any Google searches using those search terms, above the listing for SSD's Web site, which will help to correct the confusion in the marketplace. The Court also finds that seven years of corrective advertising is the appropriate measure of damages, due to the fact that Defendant's willful and blatant infringement of Plaintiff's mark and promotion of its own business with that mark has been ongoing for at least that long. Accordingly, the total corrective advertising compensatory damages that will be awarded to Plaintiff is $347,480.00. Based on the willful nature of the infringement, these damages must be

---

[1] The evidence introduced at the hearing indicated that the estimated daily cost for each of these search terms was provided as a range by Google, and Plaintiff is seeking the high end of the range for each term. Mr. Chess testified that based on his research on the issue, he believes that the high end of each range is the more likely actual daily cost. Furthermore, Mr. Chess testified that purchasing advertising on other search engines, for which projected costs could not be obtained, would cost an additional unknown amount beyond the actual costs associated with Google AdWords. Thus, the Court finds that the appropriate measure of damages is the high end of the estimated daily cost for each search term on Google AdWords, totaling $136 per day for all five terms.

trebled, resulting in a total figure of $1,042,440.00.  See 15 U.S.C. §1117(b).

Pursuant to the ACPA, the Court may award statutory damages "in the amount of not less than $1,000.00 and not more than $100,000.00 per domain name, as the court considers just." 15 U.S.C. §1117(d).  Based on the willful and blatant nature of the infringement in this case, as well as the duration of the infringement and the level of harm caused to the Plaintiff, the Court concludes that statutory damages of $100,000.00 are an appropriate and just measure of damages.  The Court will also award the requested injunctive relief, and order that the domain name "www.punch-clock.com" be transferred to the Plaintiff, pursuant to 15 U.S.C. §1125(d)(1)(C).

Finally, Plaintiff is entitled to the attorneys' fees and costs incurred in bringing this litigation.  The statute provides that "the court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. §1117(a).  The Eleventh Circuit has defined an exceptional case as a case that can be characterized as malicious, fraudulent, deliberate, and willful.  Burger King Corp. v. Pilgrim's Pride Corp., 15 F.3d 166, 168 (11th Cir. 1994).  Given the bad faith and willful nature of the violation, the Court finds such an "exceptional" case here and concludes that an award of attorneys' fees and costs is warranted.  The Court also finds, upon a review of the billing records of the attorneys and the hourly rates customary to the intellectual property field in South Florida, that the attorneys' fees requested by Plaintiff are reasonable.  Thus, Plaintiff will be awarded $30,752.50 in attorneys' fees, as well as $350.00 in court costs, $450.00 in service of process costs, and $258.55 in photocopying and computer research costs, for a total of $31,811.05.

IV.    **Conclusion**

Based on the foregoing, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Motion for Final Default Judgment [DE 18] is **GRANTED**.

2. Final Default Judgment shall be entered by separate Order, including injunctive relief as well as a total of $1,174,251.05 in monetary damages. Post-judgment interest shall accrue at the statutory rate.

3. Any pending motions are **DENIED as moot**.

4. The Clerk of Court is directed to **CLOSE** this case.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, on this 4th day of April, 2008.

_____
JAMES I. COHN
United States District Judge

Copies provided to:

Counsel of record